175065 Samuel Fields versus Scott Jordan arguments not to exceed 30 minutes per side Mr. Kirsch for appellant. As both parties may have noticed Judge Gibbons is not here she's going to hear the arguments remotely and then vote later on. May it please the court. Good afternoon. My name is Daniel Kirsch I represent the appellant Samuel Fields and I would like to reserve five minutes for rebuttal. I'd like to begin today with and expect to spend most of my time on the jury's consideration of the extrinsic evidence but if I do have any discuss the failure to present available mitigating evidence of Mr. Fields impairments. The Supreme Court has squarely established that jurors must decide a case based on the evidence from the courtroom. In Turner v. Louisiana the court held in the constitutional sense trial by jury in a criminal case necessarily implies at the very least that the evidence developed against the defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation of cross-examination and of counsel. Also in Parker v. Gladden the court again recognized this right that the evidence must come from the courtroom and also specifically stated that the the undeviating rule that the rights of confrontation and cross-examination are among the fundamental requirements of constitutional. Let's say you're a trial court judge that's concerned about this kind of jury experiment or doing some of the things that happened in this case what would the instruction look like? How would you instruct the jury on these points? I mean because you couldn't really say you can't experiment right? I could do things within the jury room that fit under the umbrella of common sense trying to figure out whether this witness's testimony really makes sense or maybe maybe you just say no experiments is that is that what your theory would be? I would instruct them that they cannot consider evidence that did not come from the courtroom. They cannot consider physical evidence to prove the prosecution's case that was not presented as a part of the trial. Can you allow them to have the evidence that was a bit of trial come to the jury room? Yes. Would you allow them to touch it, to feel it, to look at it? Yes they could I believe they could they could examine any of the trial evidence. If the testimony was that the the knife was a rough knife could they feel the knife and determine that no it's a smooth knife or if the testimony was it was a knife and say no I think that's a brown knife is that is that allowed? Yes your honor. Okay what so what what's not allowed then if they can examine it and they can make their own conclusions based upon their examination could they measure the knife? Say the testimony is the the knife in my opinion was 12 inches long could they take a ruler out and say no that that knife is only about six inches long would that be impermissible or would that be permissible? I have not studied the law on that in great detail about bringing in a ruler but I my memory my belief is that some courts have held that you cannot bring a ruler in to deliberations. Okay is it clearly established by the United States Supreme Court that you can't do that? I mean this is a habeas case right you have to it's your burden to show that it's clearly established federal law by the the US Supreme Court that this violates the United States Constitution. Right your honor and isn't that your problem in the case? Well I think that the clearly established federal law does provide that juries cannot consider evidence that the defendant does not have any right to in the jury room where they examine the evidence and come to conclusions I mean that that's evidence that's not subject to cross-examination is it? Well that's a sort of a different category the jurors are permitted to rely on their common sense and their own experience to reach conclusions. That phrase covers a lot. We don't dispute that I'm sorry. Doesn't that phrase cover a lot? It does it does but it does not cover specific physical evidence that is materially different than what was presented at trial that the jury is using to prove the prosecution's case and that's exactly what happened in this in this situation. Would your theory require us to would it require an overruling or or we're no longer following the Fletcher decision because that involved a table I believe. That was not in proof. I don't think it necessarily involves overruling Fletcher because Fletcher did find the rule that I'm talking about was clearly established federal law. I think what's different about Fletcher and the table that you were talking about is that there was nothing in the facts of Fletcher about that table that was materially different or prejudicial from the bed that was the subject of the evidence. Can I ask the same type of inquiries that you're suggesting? The table might have been a different height. The juror might have been a different height than the victim. All those same types of inquiries would have been relevant there in the same way that they're relevant here. Well I with respect I don't believe they would have all been relevant in that situation because again the facts of the case did not demonstrate that there was any difference between I mean the height of the bed with all respect does not necessarily make or the height of the table does not necessarily make a difference because the only thing that they were trying to test was when they drop the gun how would it fire. So if you drop the gun here or you drop the gun here that's not going to make it. I mean you said it doesn't necessarily make a you know that you can't consider any anything extrinsic would in effect be a ban on jury experiments because I mean we can never recreate all the particular circumstances of time and place right? Right. I mean and so I mean we could have the storm window in the jury room with the exact same screws and you could still argue if they didn't experiment with that you could still argue that the screws might have been sort of you know locked in place over time or had been set in a over time in a way at the scene at the crime scene at the time in a way that wasn't true of in the jury room or they were in the foundation you know they were in the wood of the house itself would which created more resistance. I mean you can always point to differences like you are now and so it seems to I mean tell me if I'm wrong but it seems like your rule de facto means no more jury experiments. That's not the way that I'm trying to articulate the rule your honor. In the situation that you described all of that evidence would have been evidence that was admitted at trial. But you also said there's a confrontation right and so the attorney's not there watching the I don't understand how that can be part of this. The confrontation right would have been exercised when that when that was admitted at trial when that evidence was admitted at trial. Well the way you expressed it earlier was it wasn't fair to have the jurors doing something without defense counsel there to say wait a second you're not doing it in the same way. Well I may have misspoke or not explained it as clearly as I intended to but I think the distinction that I'm trying to make now is that this the situation that Judge Kethledge brought up would involve only evidence or all of the evidence that they consider was evidence that was presented at trial. But what if what if I mean but you can't read you can't bring in everything that was present at the scene just like you know they didn't bring in the bed in the Fletcher case right they used the table. You can't bring in the structure of the house into which the it seems arbitrary to say oh it's it didn't it didn't make any difference that it was a table in this case but it does make a difference here that you know it's screws or whatever. Well I think I mean where do you draw the line about what must be a hundred percent original and what can be different? Well I think the line that the Supreme Court has drawn the line at whether the evidence was introduced at trial. I mean those are cases about like talking to the sheriff on the you know outside of the courtroom it's just not about experiments. Well not telling us this much needs to be original for the experiment to be permissible and you know this much makes it impermissible. It's true but I think the Supreme Court has said that that kind of a distinction does not matter in both of those situations. They're talking about influences that or the jury is making a decision based on information that they obtained outside of the courtroom that they obtained by doing these misleading experiments in the jury room. You think it matters you now said a couple times confront confronting the evidence. I assume that you're invoking the Confrontation Clause actually is about witnesses. So it says confront witnesses not confront evidence and I've written opinions where it was a kind of a data-generated document so it wasn't created by human and I thought the court simply said that the Confrontation Clause didn't apply because there were no witnesses. There was no speakers giving testimonial statements. So do you think you have a right to confront the cabinet or who is the witness? Well we would identify for this scenario and I would distinguish Turner and Parker because both of those cases actually involved witnesses either the deputies or the bailiff who is giving outside the courtroom testimony or statements. Here there's no statements right so how does the Confrontation Clause even enter the I believe that that is the rule that the Supreme Court has set out in Turner and Parker and the other cases that are cited. Should we should we interpret them against Crawford v. Washington which says that the Confrontation Clause only applies even to a subset of statements, testimonial statements. I don't I don't do you I do I understand and I'm not trying to argue that there there couldn't be distinctions there between. Is there a witness? No there's not but. So why does the Confrontation Clause apply if there's no witness? Well the Kentucky Supreme Court found that it does apply. I mean they they've relied on this they considered a situation that is exactly like the situation that we have in this case and they said that this is a fundamental principle where the jury in that case they used admitted evidence and they experimented on another piece of evidence that was not part of the trial and the Kentucky Supreme Court said this fundamental principle law the right of confrontation does apply in this situation and because the defendant did not get to ask about that or confront this situation or you know question about it this violated his constitutional right. If I disagree and if I say that the Confrontation Clause is limited to witnesses, do you admit you would lose then? Do you have to rely on the rule that the Confrontation Clause should be expanded to cover confronting cabinets and screws in order for you to win? I don't I don't believe there is any extension that is required in this case. I think that the rule that has been set out by the Supreme Court is clearly established federal rule. Is that a yes or a no? No, I believe that the there is no extension of a rule that's needed. We have the rule the Supreme Court has laid out the rule that is necessary to decide this case and the Kentucky Supreme Court has already applied that rule in this exact factual circumstance. Why they didn't apply it in Mr. Field's case I don't know I don't understand because it's exactly the same and they've continued to apply it afterwards. So then you would at least agree that it's already been established that the Confrontation Clause applies to more than just witnesses? Yes. Thank you. So you're not contending that there was any member of the juror that functioned as a witness with respect to what happened with the experiment? Not necessarily. I mean that all of the my understandings that the entire jury was involved there was I guess one person who actually unscrewed the screws from the cabinet and pulled the cabinet off. You're not contending that that person is the witness? No, no it's it's it's the jury was considering this misleading information that is crucial is central to the state's case. The state is relying on the fact that Mr. Fields they said that there's no one there was no opportunity for anybody else to do this it had to have been Mr. Fields and for Mr. Fields to do it he had to have unscrewed all of these screws from the storm window and he had to do it in a short amount of time. And what was what was special about the screws that were actually involved in the storm window as contrasted with the screws in the cabinet? Well there were materially different kinds of screws the screws in the storm window or Phillips head screws at least there were 17 screws there were at least 14 of them that had been painted over into the storm window. Fields was alleged to have unscrewed 17 of those with with what was called the twisty knife which was a broken off butter knife? Right. Whereas the cabinet had pristine standard screws that were not Phillips screws and had no paint on them is that correct? Exactly your honor. And and is the confrontation clause the only clause of the Constitution that you would rely on or would you rely on the due process clause and the right to a fair trial? Both of those your honor all of those are included in the rule from Turner. The jury knew from the evidence that they were Phillips head screws in the storm window? Yes the jury did know that. They also knew that they were painted screws? Yes. And they also knew that the Mr. Fields was intoxicated? Yes. Is there anything that as far as the distinction between the experiment and what was presented in the trial is there any any factor that is beyond common experience of the jurors to understand the distinction between what was in the experiment and what was presented at that it was beyond their common understanding and experience. If they if they knew all of those things and knew about those differences they wouldn't have had to unscrew the screws from the cabinet. Would you agree that it's common experience that people know the difference between a flathead screw and that the jury appreciated that difference though when when conducting the experiment because they said afterwards this show that Mr. Fields could have committed the crime and we do know if you do know the difference between the two and appreciate the difference between the two you have to know that what they did in that jury room would have been substantially easier than it would have been for Mr. Fields to do because because of this the screw heads were different and made it easier for them to interact with the tool that was being used to unscrew them. Your contention that that's a subject of expert testimony the difference between a flathead screw or standard screw or universal screw? No your honor I don't contend that. Weren't there several statements by jurors that suggested that they relied on this yes this experiment to show that this defendant could have done this crime? Yes exactly. And doesn't that show and what does that show to you and how does that support your argument? Well as I was trying to explain earlier what that shows is that this was beyond their common experience and understanding or common sense and understanding they didn't understand at least some of them didn't understand how this knife could have potentially been used in the way that the prosecution said it was and to resolve this uncertainty they had to conduct this experiment and consider this evidence that is materially different than what happened at trial. And then to rely on that evidence. Right and then they relied on it afterwards and said this shows that he could have done the crime which is. How is this case different from this hypothetical the it's a witness credibility question the witness hypothetically can't use one leg to get in a position from which they would have seen the murder they have to do it within 10 seconds and they have to go 25 feet so within the jury room someone decides to see if they can walk 25 feet in 10 seconds without using a leg. Seems like it's identical to this case and it seems utterly permissible and quite likely to maybe help the defendant. You're not allowed to do that? I don't believe that that situation is identical to this case. Of course it's not but it seems materially identical because it's not the same person it's a different person it's a person without a disability as opposed to one with one but they do know the 10 seconds and they do know the 25 feet and they just try to see if it's doable and they rely on it just as in this case and they go I don't think you can do that and therefore I think this witness was not credible I don't think they saw the murder. Well as I understand what you're describing that that's different than the situation that we have here where we're the jury is using this about credibility the jury well the jury is using this information to test yeah the state's credibility it's using the information to test the state's theory of the case to see if that theory of the case makes sense if it makes sense same as my example that Sam Fields is the one who intentionally did this act and could have done it in the act that the in the could have done it in the manner that the state alleged in the time frame that the state alleged and I may have misunderstood your your scenario but the way it's a juror that's doing it by definition the juror is not the witness the witness isn't in the room and so in that sense it's materially similar because you don't of act window and screws so it's just it's an analogy and they're just using this is their way of operationalizing common sense right I admit that there are there are experiments that the jury can perform in the jury room but this particular one for the reasons that we've talked the more you refine the theory the more the clearly established problem rears its head in other words the more it's experiments are okay some confrontation okay not okay the more it seems highly relevant to have a case that shows this refined theory well I mean the Supreme Court has said that you don't have to rely on a specific factual circumstance before you can apply EDPA to a rule like this well I mean mr. Kirsch you would agree I appreciate your straightforward answers today by the way you're you would agree the Supreme Court has never had a jury experiment case right and so in the Supreme Court has made clear over and over again that's the circuit courts can in habeas cases we must be drawing up we must be following a line that the Supreme Court is already drawn and as Chief Judge Sutton pointed out I mean now we're starting to draw lines between this case and Fletcher and that experiment that he described and we don't even have a jury experiment case from the Supreme Court and I mean your arguments are reasonable arguments but I just don't know how we can adopt the line you're advocating in a habeas case and we don't the court has never remotely drawn such a line well I think the answer to that is that the Supreme Court does not require that for EDPA review it doesn't specifically does not require an exact factual circumstance to have been that's true sometimes it's obvious you know like I had a case where an officer on purpose hit a motorcyclist with his cruiser and the question you know is that lethal force we hadn't had that case but obviously it is every see everybody would agree with that but for you to more general rule every every reasonable jurors would have to agree with the line you're drawing and it's hard to see how that's true either well the Supreme Court has said that when certain principles are fundamental enough then the necessity to apply the rule to a specific factual situation is very clear and there's no dispute I mean there's no the Supreme Court has said over and over again that these rules that we're talking about are fundamental this is a fundamental part of a criminal trial and the Kentucky Supreme Court has said the same I appreciate your your answer you started by noting yes you agree that all five issues are before the court to decide yes there's no need to send it to the panel this court can decide all those issues that's my understanding of the rule your honor yes which was the split which argument was the second best one you mentioned one argument it was the the failure to present mitigating evidence that sentencing in that in that claim your honor we talked about how there was a lot of specific information about mr. Fields and his impairments that the his attorneys knew about but for some unknown reason did not present to the jury he had PTSD has this history of brain impairments as an EEG showing an abnormal showing a structural lesion lesion in his brain he suffers from substance abuse disorder and although his attorneys presented some evidence of the abuse that he suffered when he was a child and growing up in his home they did not present all of this other information that they have that would have contextualized that abuse and explained it for the jury and given them a wholly different perspective than the information they considered without that afternoon a police the court Matthew Kuhn for the warden a Kentucky jury convicted Samuel Fields of murdering 84 year old Bess Horton 30 years ago this August the conviction twice once on direct review and again on post conviction review following a three-day evidentiary hearing that means this case comes to this court today under and the highly deferential standards it imposes under Mr. Fields can prevail only if he shows no fair-minded jurist could agree with the Supreme Court of Kentucky's conclusions in particular there are three principles that we submit pose insurmountable obstacles to Mr. Fields' jury experiment claim the first is that under the state court's decisions must be measured only against the clearly established holdings of the United States Supreme Court not its dicta and not decisions of this court the second principle under this court cannot extend a Supreme Court holding to next logical step in the precedent third and finally when the Supreme Court frames a rule at a high level of generality state courts have substantial discretion to apply that rule and this court must be deferential to those conclusions these three not arguing no experiments so that it doesn't matter and clearly established there he's saying no no new evidence and that's what made this experiment problematic so why doesn't he fit under the no extraneous evidence clearly established rule so a couple of reasons I've not heard today of a US Supreme Court decision defining what is and what is not extraneous evidence we've heard a lot of hypotheticals this morning judge Griffin's question about touching filling and looking at the knife the answer is that's not extrinsic evidence judge Murphy's question about a table of a different height that doesn't seem to be extrinsic evidence and your question chief judge Sutton about hopping we didn't get a clear answer on that my point is there are a host of details that have to be filled up before you can have a clearly established rule those details have not been filled up there's not a case that says that hopping is okay that the table experiment from Fletcher versus McKee is okay I think the warden would agree that lines have to be cases that deal with each of these different hypotheticals before each of the alcohols become clearly established so I agree with my friend in the question from judge Ketledge that it doesn't require the exact same facts but I do think there are two at least two extensions of Supreme Court precedent that would have to happen before there could be a clearly established rule the first is that this general rule this highly generalized rule would have to be extended to the context of jury experiments that's the first thing that happen and the second thing I think that would have to happen is to provide some sort of line between what jury experiments are allowed and and what or not and judge Ketledge your question about where is the line I think that is the key question of the case we don't know where the line is the warden does not dispute that in a direct review case it would make sense for the Supreme Court to draw a line there has to be a line somewhere but we don't know where that line is at this point where would you draw the line you're on the Supreme Court you get to draw the line it's so good to say what experiments are constitutional and what or not so of course that's not the province of Edpa review understanding that qualification question because you're saying drawing the line is really hard and hasn't been done and I'm just curious would you say that no rule can prohibit experiments in the jury room or are there some experiments in the jury room that are so wrong headed that they can't be constitutionally allowed so assuming I were sitting on the US Supreme Court judge Murphy's question I think is a good one pointing out the cases like Parker and Turner dealt with witnesses that were testify essentially testifying to the jury outside of the jury room but I'm asking what line on experiments correct and so that would bring to my point that because we've got witness testimony I think if the Supreme Court were to draw a line your decision in Doan on de novo it makes some sense to draw a line to where a jury juror does an at-home experiment and comes and reports to the jury in the manner of an expert witness again I don't think the Supreme Court has drawn a line that would let this court draw that line but I do think if we were on de novo review the analogy to cases like Parker Turner and Gladden is a lot stronger when we have a juror doing something at home and bring it in to take your example and put it into the facts of this case if a juror had gone home overnight and used a deformed butter knife and had tried to unscrew screws in a cabinet and had come back and had said oh yeah can be done in 17 minutes by a drunk person even though the screws are different kind of Phillips screws with paint on them in the actual case but they were doing it in a different kind that there you would say that could violate the Constitution so I think that if I were a an argument at the US Supreme Court on direct review and those were the facts of the case it would be a much harder case for the warden than would a de novo review of the facts of this case because here moving sort of to the prejudice side there were there was a there were some problems with the case in particular and the blood that was on mr. Fields did not match the blood of the victim and there was lots of blood around in the room where the victim was found in mr. Fields was found correct and mr. Fields confessed not only to murdering the victim but also to murdering his brother who hadn't been murdered who was still alive and someone else confessed correct miss Burton yes yes so so we you have a lot of that kind of evidence and you have a juror or two saying yes this experiment in the jury room was was mr. Fields could in fact have murdered the victim so on the question of prejudice we we agree that we're under the Brecht standard so there has to be a substantial and injurious effect on the verdict I'd make point do you agree that the Chapman standard was misapplied by the state court I think the best reading of the Supreme Court of Kentucky's decision is that it inverted the Chapman standard the burden on that and we can other words it misapplied it yes correct you'll recall we made that concession to you at the panel stage and we're here in front of everyone so we might as well be clear so so we're so we're under Brecht the warden agrees with that and if I can give you just a couple of data points to think about on prejudice to give you my best answer on that the first is that the juror testimony there was some discussion judge Strange that you brought up the juror that testified that she brought the issue up was juror Hall and juror Hall at 13 522 that's page ID that's record 89 3 she said quote the jury experiment quote wasn't what you know said that he was guilty or not guilty so the juror the juror that brought the issue up said that it wasn't what determined guilt at least in her mind I do want to clarify one thing but there was also juror testimony that this proved to me he could have done it that it was possible yes that was the the me of my concerns gave her peace of mind I think is what she said I do want to clarify one thing from the supplemental brief at page 19 we talked about what juror Hall was 100% sure of I went back and read that in preparing for argument I think what she was 100% sure of it came out of her mouth in an odd way but she was 100% sure she asked the question but then she said that it did not it wasn't what you know said that he was guilty or not so the one juror that had concern said it did not affect her bottom line conclusion although it showed it was possible the second data point that we asked the court to look at on prejudice is the fact that Mr. Fields was indisputably found in the house with Miss Horton's dead body there's no dispute about that he was there he was arrested there in the room with her he was in the room with her dead body the third point and judge more you brought this up there were there were confessions there was not one confession to one person there wasn't three confessions to three different people to the murder of this and I think were they all at the same basic time while he was drunk like one was to the EMT correct correct and that was approximately an hour so they had to drive to Ashland from Carter County so it's approximately an hour or so his blood alcohol content at that point in time was 0.14 so he wasn't intoxicated but the first two confessions were to the arresting officers first to the first officer they got there to the second officer after he was Miranda's and then third to an EMT so we were all while he was drunk correct he was presumably he was if he had a 0.14 an hour later he was drunk when it happened yes so that was the evidence and so we think that under Brecht that if you put together the fact that the only juror that said it was an issue for her said it wasn't what determined guilt you put that together with he was in the room with her dead body plus that he confessed three times we don't think blood on him because he had broken a window by punching it out earlier and the blood on him was not the blood of the victim who died in a very brutal way which left a lot of blood but none of her blood was on him correct that's correct and we just qualify that a bit there was a blood spatter expert that testified who testified that given the nature it was probable that there would have been blood spatter but not certain so there was an explanation for that and was there his blood from his already cut hand on her right there was none of Mr. Phil's blood on the victim that's correct and was his blood on the storm window or on the twisty butter knife or on the screws where was his blood found so as you know he broke a window at a different property and a lot of his blood was found there and then it's a short distance from that other property to Miss Horton's house and his blood my memory is there was a screen on a window on her back porch that his where the storm window was no ma'am on the other side and your theory was that he came in through the storm window that he had taken off the 17 Phillips screws caked with paint in that very limited amount of time correct that was the Commonwealth's theory that because when the first officer the first officer to enter the house went around and I believe it was the middle window on the front of Miss Horton's home the the screen or the storm window had been through that front window and he did all that without leaving a drop of his own blood there so I think that's that's correct now I will point out that there was blood that was found I believe it was on his shirt that they were able to ascertain who whose it was remarkable there wouldn't be any blood on that storm window there was there was no blood that was found there and and how much blood was found in the other property I'm just curious sure it was found at various places around my memory is around the back window where he you know as Judge Moore asked so the the pictures I mean the specks of blood and they were on the the the sidewalk around the house there was found somewhere I believe inside that house as well because he punched through the window with his hand correct my hand that he presumably would have been holding a knife when he presumably killed a woman I think presumably yes and the the testimony was that he arrived at Miss Burton's residence she was sitting on the front porch she had been locked out and he took her he handed a knife to her another knife to her that was dropped and he said I'll break in or I'll get in the house essentially and at that point Miss Burton left and went to her family's a member of her family's residence she was gone in this important time frame she was and in this case there are other confessions are there not it so there are there was testimony that Miss Burton confessed one general one specific to two other people the first one was to a lady named Kathy Galleon you know Miss Galleon had been evicted by Miss Burton's husband and so there was there was some tension there Miss Galleon never told the police about the confession she eventually told the defense attorneys that confession alleged confession came five years after the murder that's Burton Burton had a feud with Horton the victim correct because Horton had evicted Burton and Burton was very angry about that so there was testimony to that I think Miss Burton contradicted that in her testimony but I will agree there was testimony to the effect that she and the victim is Miss Horton had disagreed miss wasn't that included in information about that included in one of the confessions by about what she telling me to do she's not going to be telling me to do anything anymore or something along those lines that was said to someone else I don't the other test the other confession of Miss Burton yes the first was the Kathy Galleon on the second one was to Norma Slos Miss Slos waited six years after the confession to tell the police the alleged confession there came approximately four years after the murder and what did what was her statement as to what Miss Burton said my understanding is that you know Burton and Miss Slos did not have a close relationship Miss Burton walked up out of the blue and then made allegedly made an incriminatory statement with respect to Miss Horton so that was that was there again I you know we can do does all this just go to this all goes to prejudice I think it is a relevant to point I was about to make yes so I mean I could let you make make your point my question was going to be this all goes to prejudice so unless we find a violation we don't need to be worrying about prejudice and do you understand Brecht operate on a sliding scale like the more prejudice the less of a of an error we need to find or is it we need to find a clearly established error before we start talking about prejudice the latter it's I don't believe it's a if you agree with the warden's position that there is no clearly established law from the US Supreme Court on this issue as I talked about at the beginning of my argument you agree with me on our position is you do not need to reach any of these factual questions about this cold record from how do those factual questions play into what the Supreme Court has told us about why they have articulated a general rule I'm thinking about Williams which says that when a rule of general application which the court does and can make in fact a rule or a rule designed for the specific purpose of evaluating a myriad of factual context which is clearly what you have in this type of case then quoting again it will be the infrequent case that yields a result so novel that it forges a new rule not one dictated by precedent what is it about this case that makes it so rare that the application of the Supreme Court's articulated rule would be inapplicable so I think the the Fairmont a juror standard applies and so we have to look at the three or four cases involving the bailiffs the witnesses who stayed with the jurors the contempt issue none of those involved a jury experiment we have to take that highly generalized rule and then you would have to apply it here in a way that my opposing counsel concedes that some jury experiments are constitutional and others are not and so I think that the the tension judge strange is between unreasonable application and extension and cases like white versus Woodall or the Arbery decision from the US Supreme Court say that sometimes the line between application and extension is hard to draw we submit that it's just not that hard to draw here because we little bit sounds to me like an argument that the Supreme Court can in fact make a general rule because there is a recognition of the importance of the interest at stake both confrontation due process validity of evidence all of the reasons to have things occur in the courtroom and yet when you want to apply it now you tell me we look to these four cases it's not one of these four cases we're done that doesn't jibe to me with what the court has said about why there is a necessity for this myriad circumstances covering due process type of rule for which will cover these unless it's so novel that it isn't covered by it and you cite for novel circumstances and say end of game can you explain to me how that explanation works in the context of this rule so I think it works I think the premise of your question I would argue is intention with what the US Supreme Court has said specifically what all what it said is if a habeas court must extend a rationale before it can apply to the facts at hand then by definition the rationale was not clearly established at the time of the state court decision and so I've got these four cases none of which are we all agree none of which will involve jury experiments so you got it extend those cases first to jury experiments and then my opposing counsel now agrees you have to extend those four cases in a way that draws a line between some jury's experiments being permissible and some not so I do I think there's two inferential steps that we have to take under US Supreme Court that they have to before this court could award relief to Mr. Fields is the extension is in fact of what the Supreme Court has said right sorry I didn't hear the intention that we are looking to is an extension of what the Supreme Court said maybe I'm saying this incorrectly but it seems to me that what the Supreme Court said is their rule that they are covering a myriad of factual context it is conversely to what you say it is the infrequent case that yields a result so novel that it forges a new rule one not dictated by precedent and the precedent that we're talking about isn't it the Supreme Court precedent rather than trying to assure ourselves of where we fit within the four following cases you understand my question something I think I go back to what all like the issue there was a no adverse inference instruction at the penalty phase US Supreme Court had not addressed that issue it had addressed it at the guilt phase and it had said that generally speaking the the the Fifth Amendment protections apply at the penalty phase so it had not liquidated that highly general rule that it generally applies and so the petitioner got up and I think make the argument very similar to the one that you're making you put all these together it's fundamental enough it's obvious this is the case and the US Supreme Court said even if it might be the next logical step in our precedent that's not the Providence a province of Ed per review we have to wait for the Supreme Court to liquidate that general rule before we can have a clearly established violation and you know as someone representing the state with facts that are generated across a multitude of events are going to make their way to the Supreme Court it seems to me that what you're saying is here is this general rule that should apply intentionally so because of the very significant constitutional rights involved and yet if you don't have that case already there you lose and isn't that at odds with Panetti when the Supreme Court said if it does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied how do you account for that statement in Panetti so I would give the same answer to that I gave to judge Mathis on that which is that that standard about the same set of facts would apply if the Supreme Court had liquidated the general rule in the context of jury experiments and had drawn some sort of line I think Judge Batchelder's panel dissent makes this point really perfectly that she says that the Supreme Court has told us over and over cautioned circuit courts against defining a rule at too high a level of generality and that for example Nevada versus Jackson Smith white versus Woodall they've done that over and over again the court made the exact same point in Brown versus Davenport a case that came from this court so they've just been unyielding in cautioning courts against this highly general rule and how do we know it's highly general we know it's highly general because it's never been extended to this context and my opposing counsel acknowledges you've got to draw a line because all jury experiments can't be unconstitutional I think those two markers tell us that we're not talking about materially indistinguishable facts we're talking about a rule that is simply too general to supply a ground for EDPA relief we have several different constitutional provisions in play I don't understand why we shouldn't look at each constitutional provision and ask the question whether this constitutional provision is implicated so I asked about the confrontation clause what's your view on whether the confrontation clause applies to evidence rather than witnesses so my view is that it requires extending it to a new circumstance right this is this is away from people and to things and to things to a cabinet in particular cabinet would be a witness so the state's position that that's a reasonable extension or it's so it's not it I mean it has to be such that no fair-minded jurist would disagree that that's the only extension if I it doesn't that doesn't that if I assume that it really means witnesses that means the confrontation clause is just not implicated in this case like it would be asked well what's the next one well I've seen impartial juror and in the cases like Erwin ten of the or nine of the twelve jurors went into the jury room went into the trial saying he was guilty okay that seems like an impart or a partial a biased juror but I don't see how we could possibly say this juror this jury was biased simply because it didn't experiment or at least maybe maybe I'm missing something about what what it means to have an impartial jury but would would would you think that an experiment would make the jury and biased right I think you have it's obvious that there's bias there where they would they had predisposed were predisposed against the defendant so again this makes the same point I was making wrong I mean that's the way I think of our constitutional arguments is I ask what provision is at stake and I suppose the problem I have in this case is I don't even know what provision me I think that that's that's how the petitioner has presented it and I think you're right that if you break down I think two or three that I've heard today you know confrontation you have to extend it can't do it for relief their right to fair trial you have to extend it you can't do it for relief there and an impartial jury you have to extend it you can't do it for relief there I think that you can put the constitutional rights together you can look at them individually it's an extension not at but thank you your honor very much mr. all right few points I want to make first there's a question earlier about instruction juries are are instructed to consider the evidence before it that is a part of the instructions that they receive there's this you agree they can do jury experiments I mean if we don't have a Supreme Court case I think the assumption is experiments are okay until they say otherwise so the assumption is experiments are okay provided again that they're using evidence that has been admitted that they're not there that they're not using evidence that is totally outside of the trial because the Supreme Court has clearly said that that is impermissible what if the evidence must come from the courtroom I don't mean to interrupt you that's all I mean let's say they're using the same screws but in you know the intervening few years those screws have gotten pretty rusty it's the same screws their evidence but they're not the same condition they were is that a permissible experiment again I think it is permissible for the jury to evaluate the evidence that we've been if it was like demonstrably harder in that instance let's say like undoing the undo I mean is that fair to the defendant I mean you think that that's an experiment the court should should approve again I think the defendant could make an argument about that but I think that that situation is fundamentally different than what we're talking about that happened in this trial what line is the Supreme Court drawn as to jury experiments what line has a Supreme Court established that these jury experiments are consistent with the United States Constitution and these are not consistent with the Constitution well as the discussion earlier with the Supreme Court has not specifically applied this rule in the context of a jury experiment so how is the state court supposed to know then we're saying this is an extreme malfunction of the all reasonable jurors should have known jurist should have known that this violated the US Constitution of the Supreme Court hasn't drawn a line how's the Kentucky Supreme Court supposed to know because the Kentucky Supreme Court has already considered this exact issue and found in a in a case exactly similar to this one that it does apply they've already they've already determined that like a slightly different argument that sounds like the Kentucky Supreme Court isn't consistent in its own interpretation of its precedent but that's a slightly different question like actually a really different question than whether they this time made an error in applying clearly established Supreme Court precedent and that's our only question right well but I believe it is a relevant question because we're trying to determine did what the court did in this case was that objectively reasonable or not as the fact that they baseline being what the US Supreme Court has done not what the Kentucky Supreme Court has done before the Supreme Court for the rule for what the rule is but I think you can look at and the Supreme Court has said this you can look at what a state court has done to determine whether or not ed pedeference applies they said that in the Panetti case because in that case which involved the Ford claim the state court not only didn't it did not apply federal law but they didn't apply their own state law and the Supreme Court said in that situation it's not appropriate to give this kind of deference that's always talked about in advocate cases to that court because they didn't even follow their own law Kentucky Supreme Court sort of disagreed with itself doesn't that sort of show that the law wasn't clearly established there's such an easy question the court to me well to me it shows that it was unreasonable to not apply it in this case because they applied it before and they've applied it after it continues to be the law in Kentucky mr. Fields case is the only one that I know of where they have not applied the law as interpreted by the Supreme Court thank you mr. Kirsch thank you mr. Coon thank you for your helpful briefs and above all for candidly answering our questions which we always appreciate the case will be submitted